UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENISE L. LENKIEWICZ,

                Plaintiff,

v.                              Civil Action No. 13-0261 (RCL)

JULIAN CASTRO, Secretary,
U.S. Department of Housing and
Urban Development

                Defendant.

**FILED**
JUL 31 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

In this case, plaintiff, Denise L. Lenkiewicz ("Lenkiewicz") brings a single claim of discrimination against the U.S. Department of Housing and Urban Development ("HUD") under Section 501 of the Rehabilitation Act of 1973. Before the Court are the plaintiff's Motion for Summary Judgment, ECF No. 56, the defendant's Opposition, ECF No. 67, and the plaintiff's Reply, ECF No. 68. Also before the Court are the defendant's Motion for Summary Judgment, ECF No. 57, the plaintiff's Opposition, ECF No. 64, and the defendant's Reply, ECF No. 72. For the reasons set forth below, the plaintiff's Motion for Summary Judgment will be DENIED. The defendant's Motion for Summary Judgment will be GRANTED in part and DENIED in part.

### I. BACKGROUND

Lenkiewicz was employed as a Freedom of Information Act ("FOIA") specialist at the U.S. Department of Housing and Urban Development ("HUD") from October 2008 to November 2011. Answer ¶ 6, ECF No. 6. Lenkiewicz's responsibilities included "reviewing FOIA requests,

1

assigning requests to a responding office, and redacting responsive documents." Complaint ¶ 7, ECF No. 1; Answer ¶ 7. Throughout her time at HUD, Lenkiewicz had physical impairments and submitted evidence of these physical impairments. Def.'s Resp. to Pl.'s Interrog. No. 10, ECF No. 56-1.

Lenkiewicz began submitting requests for accommodation in late 2009. Pl.'s Resp. to Def.'s Interrog. No. 3, ECF No. 56-2. In August 2009, Lenkiewicz suffered a fracture of her right foot. Dr. Shammas Note (Aug. 6, 2009), ECF No. 56-28. Lenkiewicz "requested that a spare, unused printer be moved to her office so she would not have to walk multiple times per day to retrieve printed documents." Compl. ¶ 17. Lenkiewicz made a verbal request to Lewis, Lenkiewicz Dep. 111:25-112:1, ECF No. 56-18, and sent an e-mail to Deborah Rizzo, the head of HUD's Reasonable Accommodations Branch, E-mail from Denise Lenkiewicz to Deborah Rizzo (Sept. 11, 2009, 9:11 AM), ECF No. 56-21. Vicky Lewis, Lenkiewicz's supervisor, denied the request on December 7, 2009. Compl. ¶ 17. Instead, Lewis offered Lenkiewicz an alternative accommodation in the form of having a contractor pick up her documents from the printer. Lenkiewicz Dep. 113:12-114:5.

Soon after breaking her foot, Lenkiewicz made a request to Lewis for a parking space at or near the HUD headquarters. Lenkiewicz Dep. 100:13-100:25. Lewis did not grant or deny the request for a parking space and told Lenkiewicz to request one through HUD's Mail and Transportation Branch. Lenkiewicz Dep. 102:7-102:20; Lewis Dep. 74:15-18, ECF No. 56-16. The Mail and Transportation branch told Lenkiewicz that there weren't any parking spaces available. Lenkiewicz Dep. 103:6-103:16.

In 2009, Lenkiewicz further requested to be moved from the HUD office in which she was working because she was having breathing problems. Lenkiewicz Dep. 130:18-131:13. Lenkiewicz

2

requested the transfer because "[there was] something in that office making [her] sick." Lenkiewicz Dep. 131:1-131:10. The relocation request was ignored. Pl's Resp. to Def.'s Interrog. No. 3.

In December 2009, Lenkiewicz also submitted a request for a reasonable accommodation in the form of telework. Lenkiewicz Dep. 108:21-109:12. Lenkiewicz submitted a Form 1000 with the assistance of Deborah Rizzo at the Accommodations Office. *Id.* HUD failed to respond to Lenkiewicz's request for a reasonable accommodation and misplaced the corresponding Form 1000. E-mail from Denise Lenkiewicz to Deborah Rizzo (Jan. 19, 2010 10:44 AM), ECF No. 56-21.

In December 2010, Lenkiewicz submitted another Form 1000 requesting a reasonable accommodation in the form of telework. Answer ¶ 26. In her request, Lenkiewicz cited her COPD with chronic bronchitis and debilitating arthritis. Accommodation Request for Persons with Disabilities for Denise Lenkiewicz (Dec. 22, 2010), ECF No. 56-22. In support of this request, Lenkiewicz submitted four documents and two releases permitting HUD to contact two of her physicians. Lenkiewicz Dep. 177:4-177:10. None of the documents discussed Lenkiewicz's alleged COPD. *See* Accommodation Documents, ECF No. 57-1. HUD submitted the request to Federal Occupational Health (FOH). Federal Occupational Health Submission (Jan. 5, 2011), ECF No. 57-1. Dr. James Allen evaluated Lenkiewicz's request and the aforementioned documents, along with a medical assessment submitted by one of Lenkiewicz's physicians, and determined that none of the documents or the assessment indicated a substantial limitation of a major life function. Allen Dep. 94:1-20; 153:10-157:18, ECF No. 56-15. Dr. Allen recommended that HUD deny Lenkiewicz's telework request. Allen Dep. 134:9-134:21. HUD denied Lenkiewicz's accommodations request, and the denial was backdated to the date of the initial request (December

22, 2010). Accommodation Request for Persons with Disabilities for Denise Lenkiewicz (Dec. 22, 2010). Lenkiewicz stopped reporting to work in May 2011. Lenkiewicz Dep. 165:18-24.

## II.  LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

In making a summary judgment determination, the court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "the mere existence of a scintilla of evidence in support of the non-moving party" is insufficient to create a genuine dispute of material fact. *Id.* at 252. Instead, evidence must exist on which the jury could reasonably find for the non-moving party. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III. ANALYSIS

### A. Failure to Exhaust Administrative Remedies

"A failure to exhaust administrative remedies for Rehabilitation Act claims is a *jurisdictional* defect, requiring dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 58 (D.D.C. 2011) (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)). The Rehabilitation Act reserves "judicial review to employees 'aggrieved by the final disposition' of their administrative complaint, thereby mandating administrative exhaustion." *Spinelli*, 446 F.3d at 162 (quoting 29 U.S.C. § 794(a)(1)). The plaintiff bears the burden to plead and prove administrative exhaustion. *Mahoney*, 824 F. Supp. 2d at 58.

Administrative exhaustion of a Rehabilitation Act claim begins with the employee's obligation to "consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory," and "[i]f the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the counselor, of the right to file a discrimination complaint." 29 C.F.R. § 1614.105(d). Once the complainant receives the notice of right to file a complaint, the complainant has 15 days to file it. 29 C.F.R. § 1614.106(a) - (b). Finally, "[t]he agency is required to conduct an impartial and appropriate investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the time period." 29 C.F.R. § 1614.106(e)(2). "A complainant who has filed an individual complaint . . . is authorized under . . . the Rehabilitation Act to file a civil action in an appropriate United States District Court . . .

[w]ithin 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed." 29 C.F.R. § 1614.407(a).

When it comes to presentation of EEO complaints, "[t]he relevant inquiry is not whether the complainant has filed a detailed statement spelling out precisely his objections but whether the actions he did take were 'adequate to put the [agency] on notice.'" *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (quoting *President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980)). Further, "notice may be adequate where a claim is brought to agency's attention 'during the course of the administrative proceeding' and 'before it issued its final decision' even if the argument or claim is not clearly set out in the complaint.'" *Id.* Actual knowledge of a discriminatory act is not necessary; constructive knowledge of a discriminatory act will commence the 45-day period. *Carroll v. England*, 321 F. Supp. 2d 58, 66 (D.D.C. 2004) (citing 29 C.F.R. § 1614.105(a)(2)). If there is any doubt as to when the discriminatory act occurred, the 45-day period begins when the aggrieved individual "knew, or should have known, about the alleged discriminatory action." *LaFavors v. Shinseki*, No. 10-CV-1575 (RLW), 2012 WL 640878 (D.D.C. 2012) (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003)).

HUD argues that Lenkiewicz never exhausted her claim with respect to her termination, her 2009 relocation request, and her 2009 request to telework. Def.'s Reply at 8. Lenkiewicz never contacted an EEO Counselor or filed an administrative complaint with respect to these events. Since failure to exhaust is a jurisdictional bar, and the plaintiff failed to prove that she has exhausted these allegations, this Court does not have jurisdiction over them. Accordingly, these portions of Lenkiewicz's claim are dismissed.

HUD further argues that Lenkiewicz failed to timely exhaust her claim with respect to her 2009 request for a printer and her 2009 request for a parking space since she waited more than 2

years to exhaust her claims. Def.'s Reply at 9. Lenkiewicz argues that the 45-day counseling period is not a jurisdictional requirement. Pl.'s Opp'n at 38 (citing *Koch v. Shapiro*, 777 F. Supp. 2d 86, 90 (D.D.C. 2011)). Lenkiewicz argues that since the statutory time limits are subject to "waiver, estoppel and equitable tolling," the 45-day counseling period is "subject to waiver" under § 1614.604(c) and cannot be jurisdictional. Pl.'s Opp'n at 38. Plaintiff further argues that "other courts in this district have recognized that failure to comply with the regulatorily prescribed time limits raises no jurisdictional bar as long as the plaintiff had actually filed an administrative complaint." Pl.'s Opp'n at 38. Plaintiff also points out that courts have recognized that similar limits for Title VII and ADA claims are not jurisdictional. Pl.'s Opp'n at 40-41.

In arguing that time limits are not jurisdictional and that it was HUD's "burden to plead and prove whether the time limits prescribed by regulation were satisfied," plaintiff relies on *Bowden v. United States*, which addresses the issue of whether untimely exhaustion of administrative remedies is an affirmative defense for the purpose of Title VII actions, not Rehabilitation Act actions. Pl's Opp'n at 43 (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.D.C. 1997) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985))). Similarly, the district court cases which plaintiff cites in support of her argument rely on *Bowden*. *See Perry v. U.S. Dep't of State*, 669 F. Supp. 2d 60, 65 (D.D.C. 2009); *Koch v. Shapiro*, 777 F. Supp. 2d 86, 90 (D.D.C. 2011) (citing *Perry*, 669 F. Supp. 2d at 65); *Fortune v. Holder*, 767 F. Supp. 2d 116, 120 n.5 (D.D.C. 2011) (citing *Perry*, 669 F. Supp. 2d at 64). However, "[t]he distinction between the two rules is underscored by the differing claims asserted by [the plaintiff] – exhaustion of administrative remedies is a jurisdictional requirement under the Rehabilitation Act, *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006), but is merely an affirmative defense under Title VII, *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)." *Saba v. United States Dep't of*

*Agric.*, 26 F. Supp. 3d 16, 22 (D.D.C. 2014) (Lamberth, J.). Crucially, "[b]ecause untimely claims cannot be properly exhausted, the timeliness of [plaintiff's] claims is dispositive of whether he can make the necessary showing to survive [defendant's] motion [to dismiss]." *Id.*; *see also Ellison v. Napolitano*, 901 F. Supp. 2d 118, 125 (D.D.C. 2012) (dismissing claims "for failure to exhaust in a timely manner" where the plaintiff "did not initiate contact with an EEO Counselor within 45 days of their alleged occurrences"); *Smith v. Lynch*, No. 10-1302, 2015 WL 2265100, at *16 (D.D.C. May 13, 2015) (holding that "while Title VII's exhaustion requirements are not jurisdictional" and untimely exhaustion is an affirmative defense for Title VII claims, failure to exhaust administrative remedies under the Rehabilitation Act is a "jurisdictional defect").

Finally, "even in the absence of a Rule 12(b)(1) motion, the Court has an independent duty to assess jurisdiction." *Rosier v. Holder*, 833 F. Supp. 2d 118, 125 (D.D.C. 2012) (dismissing plaintiff's claims without prejudice where the plaintiff's complaint did not contain "sufficient factual matter" to "draw the reasonable inference" that plaintiff timely exhausted Rehabilitation Act claims). Therefore, the allegations which Lenkiewicz raised in an untimely manner (including her 2009 requests for a printer and parking space) in her 2011 administrative complaint are dismissed.

### B. December 2010 Request to Telework

#### 1. *Exhaustion*

The only allegation which was exhausted in a timely fashion is Lenkiewicz's December 2010 request to telework. On December 22, 2010, Lenkiewicz submitted a Form 1000 requesting accommodations for her COPD and arthritis. *See* Accommodation Request for Persons with Disabilities for Denise Lenkiewicz (Dec. 22, 2010) (noting "telework" in the "Requester Comments" section of the form). Lenkiewicz's EEO Counseling Report states that Lenkiewicz

initially contacted Denis[e] Banks in January 2011. EEO Counseling Report – Individual Complaint (June 14, 2011) at 2, ECF No. 64-2. In an e-mail to Alison Hargrove on March 16, 2011, Lenkiewicz expressed that "to date [she] hadn't heard anything as to the status of [her December 22, 2010] request" and that "for the second time in 2 years a request for Reasonable Accommodations has been fruitless and caused great distress as [she's] had to abandon anything concerning [her] health to get any sort of paycheck." E-mail from Denise Lenkiewicz to Alison Hargrove (Mar. 16, 2011 08:03 AM), ECF No. 56-21. This demonstrates that on March 16, 2011, Denise Lenkiewicz believed her request for telework to have been in vain, and subsequently contacted the EEO office regarding her claims for disability discrimination the same day. EEO Counseling Report – Individual Complaint (June 14, 2011) at 6. Lenkiewicz's contact with the EEO office was timely. *See Caroll*, 321 F. Supp. 2d at 66 (treating plaintiff's belief "that her application was no longer being considered" as belief that plaintiff suffered an "adverse, possibly discriminatory act," and marking the start of the 45-day counseling period requirement). On April 12, 2011, Lenkiewicz made an appointment with Erika Selmon and the initial interview took place on April 15, 2011. EEO Counseling Report – Individual Complaint (June 14, 2011) at 2. Although counseling was not conducted within the required 30-day period, an extension was requested and approved. *Id.* at 4. On May 25, 2011, the EEO office issued Lenkiewicz a notice of right to file a formal EEO complaint. Lenkiewicz filed her complaint within 15 days, on June 9, 2011. *See* Formal Complaint of Employment Discrimination for Denise L. Lenkiewicz (June 9, 2011) at 4, ECF No. 64-2. In her administrative complaint, Lenkiewicz "claims she was denied the right to work from home or any other reasonable accommodation although her doctor allegedly thought it was necessary." *Id.* at 3.

### *2. Discrimination Claim under the Rehabilitation Act*

Section 501 of the Rehabilitation Act mandates federal employers "to act affirmatively on behalf of disabled individuals." *Loya v. Sebelius*, 840 F. Supp. 2d 245, 258 (D.D.C. 2012) (citing 29 U.S.C. § 791(b)). The federal agency must "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless the [agency] can demonstrate that the accommodation would impose an undue hardship on the operations of its business." *Id.* (quoting 29 C.F.R. § 1630.9(a)). In determining the appropriate reasonable accommodation, the government has the burden to "initiate an informal, interactive process with the qualified individual with a disability in need of accommodation." *Id.* (quoting 29 C.F.R. § 1630.2(o)(3)). "To establish a prima facie case of discrimination under the Rehabilitation Act for an employer's failure to reasonably accommodate a disability, "a plaintiff must show '(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make the accommodation.'" *Id.*

In order to be considered disabled under the Rehabilitation act, an individual must show that she "(1) has a physical or mental impairment which substantially limits one or more . . . major life activities; (2) has a record of such an impairment, or (3) is regarded as having such an impairment." *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008) (quoting 29 U.S.C. § 705(20)(B)). In light of the ADA Amendments Act of 2008, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i). Basic abilities, including "walking, seeing, and hearing" qualify under the Act, while "activities that lack 'central importance to most people's daily lives'" do not. *Id.* at 944.

With respect to her request to telework, plaintiff claims that she was disabled due to her COPD with chronic bronchitis and debilitating arthritis. Accommodation Request for Persons with Disabilities for Denise Lenkiewicz (Dec. 22, 2010). Plaintiff claims her Chronic Obstructive Pulmonary Disease with chronic bronchitis is a "physiological disorder or condition" that affects her respiratory system and "substantially limits (i) the major life activity of breathing and (ii) the operation of her respiratory functions." *Id.* (internal citation and quotation marks omitted). Plaintiff's expert, pulmonary specialist Alan Schwartz, M.D. concluded that Lenkiewicz's "pulmonary impairments . . . substantially limited her ability to breathe" during and after her employment at HUD. Schwartz Rep. ¶ 9, ECF No. 56-11. Lenkiewicz's pulmonary impairments, "together with musculoskeletal impairments and Plaintiff's obesity, also substantially limited her ability to perform manual tasks, walk, stand, lift, bend, and engage in other physical activity." *Id.* Eric Dawson, M.D. also stated that Lenkiewicz "suffered from a variety of orthopedic and musculoskeletal impairments that substantially limited her ability to perform manual tasks, walk, stand, lift, bend, and engage in other physical activity." Dawson Rep. ¶ 8, ECF No. 56-10.

HUD argues that plaintiff failed to submit sufficient documentation at the time of her accommodations request and cannot use any additional evidence now. Def.'s Opp'n at 16. As Lenkiewicz correctly points out, there is no precedent establishing such a restriction on the kind of evidence that can be presented to demonstrate her disability. HUD argues that during HUD's medical review of Lenkiewicz's request, Dr. Allen claimed he didn't have a "medical basis" to grant an accommodation, and that treating physicians Dr. Shammas and Dr. Williams "explained that the full medical report submitted in support of plaintiff's request showed no limitation of a major life activity." Def.s Mot. at 30-31. Most importantly, HUD argues that "Dr. Allen concluded that none of the documents submitted by Plaintiff or her physicians identified a substantial

limitation of a major life function." Pl.'s Opp'n at 13. The defendant, however, cannot simply limit the analysis to the documents submitted with the December 2010 request and ignore evidence of Lenkiewicz's disabilities.

The D.C. Circuit has rejected the requirement that there must be "precise notice" in Rehabilitation Act claims. *Crandall v. Paralyzed Veterans of Am.*, 146 F. 3d 894, 899 (D.C. Cir. 1998) (citing *Blackwell v. U.S. Dep't of the Treasury*, 830 F.2d 1183 (D.C. Cir. 1987)). Indeed, "no great refinement of the concept of notice is needed, beyond the bedrock requirement of an adequate, prior alert to the defendant of the plaintiff's disabled status." *Id.* Lenkiewicz argues that HUD had notice of each of her disabilities. Pl.'s Mot. Summ. J. at 30. Lenkiewicz claims that HUD had notice of her chronic orthopedic disabilities, since Lenkiewicz's December 2010 accommodations request referred to "debilitating arthritis" as a "hindering disabilit[y]" and included supporting medical documentation. *Id.* Lenkiewicz also argues that HUD had notice of her chronic respiratory disabilities since she described her COPD with chronic bronchitis as a "hindering disabilit[y]" on her December 2010 accommodations request. *Id.* at 31. In addition, HUD was aware of Lenkiewicz's multiple hospitalizations due to breathing difficulties. *Id.* at 31. Furthermore, Lenkiewicz communicated her breathing problems directly to her supervisors. 2009-2011 Phone Logs for Denise Lenkiewicz, ECF No. 56-22. Furthermore, HUD failed to address this element of the claim in their motions.

Plaintiff argues that per the opinion of Dr. Schroeder, a vocational rehabilitation specialist, Lenkiewicz "has the skills, experience, and expertise necessary to perform the essential functions of the FOIA Specialist position at HUD" and she "was and remains capable of performing those essential functions and was qualified for that position, notwithstanding her disabilities." Schroeder Rep. ¶ 27, ECF No. 56-12. Dr. Dawson also testified that "accommodations that reduced Ms.

Lenkiewicz's level of physical activity would have reduced the severity of her musculoskeletal impairments and therefore reduced her pain, spasms, and swelling, which in turn would have improved Ms. Lenkiewicz's ability to concentrate and think." Dawson Dep. ¶ 20. In addition, an accommodation like telework would have "reduced the severity of her breathing impairments and improved her ability to breathe, which in turn would have made it easier for Ms. Lenkiewicz to concentrate and think." Schwartz Rep. § 25. HUD failed to address this element of the claim in their motions.

It is undisputed that HUD eventually denied Lenkiewicz's request to telework. There is, however, a dispute of material fact as to whether HUD's denial was due to their failure to engage in a good-faith interactive process with Lenkiewicz, or Lenkiewicz's failure to do the same. When an employee requests an accommodation, HUD must "initiate an informal, interactive process with the qualified individual with a disability in need of accommodation." 29 C.F.R. § 1630.2(o)(3). In order to meet its obligations under the Rehabilitation Act, "an employer needs information about the nature of the individual's disability and the desired accommodation – information typically possessed only by the individual or her physician." *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014). In particular, "[w]hen the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation." *Id.* at 31-32 (quoting *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1309 (D.C. Cir. 2010)). Neither party in this "flexible give-and-take" process "should be able to cause a breakdown . . . for the purpose of either avoiding or inflicting liability." *Id.* at 32 (citation omitted).

> "Thus, courts should look for signs of failure to participation in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is

> not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility."

*Id.* (citations and internal quotation marks omitted).

Plaintiff claims that HUD "failed to engage in a good-faith interactive process with Lenkiewicz to find an accommodation." Pl.'s Mot. Summ. J. at 35. Plaintiff lists a variety of ways in which HUD failed to engage in the interactive process during her December 2010 telework request. Specifically, Lenkiewicz alleges that HUD denied her December 2010 request without telling her; withheld important information from the Reasonable Accommodations Branch (including her position description, phone logs, doctor's notes, FMLA request forms signed by her doctors and her absence from the office since May 2011); "arbitrarily insisted that Lenkiewicz's December 2010 request for accommodation in the form of telework be referred to FOH for medical review" (when most such requests were not); withheld "relevant medical evidence" from Dr. Allen and improperly followed his recommendation; failed to draw an inference from Lenkiewicz's documentation that she had limitations of major life activities such as breathing, manual tasks and walking; failed to give Lenkiewicz a temporary accommodation as the medical review dragged on for months; failed to provide an alternative accommodation; and others. *Id.* at 40-42.

HUD, however, argues that Lenkiewicz "herself failed to properly engage in the interactive process," since "[d]espite multiple e-mails and phone calls attempting to reach Plaintiff to determine whether she has additional medical documentation to support her accommodation request, Plaintiff simply chose not to respond and not to submit additional information in support of her claim." Def.'s Opp'n at 31. In her reply, Lenkiewicz stated that "there is no evidence that HUD contacted Lenkiewicz to determine whether she had additional medical documentation to support her accommodation request after Dr. Allen recommended denying it." Pl.'s Reply at 13

(internal citation and quotation marks omitted). Lenkiewicz also claims that there is no evidence that she actually received any e-mails or phone calls from HUD after she left the office in May 2011. *Id.* at 15. Thus, there is a genuine dispute of material fact as to who caused the breakdown in the interactive process, leading to the denial of Lenkiewicz's request for accommodation.

Finally, plaintiff correctly claims that HUD's undue hardship defense fails since undue hardship is an affirmative defense and HUD failed to plead it in their Answer to Amended Complaint. Pl.'s Opp'n at 30-31. At least for purposes of defendant's summary judgment motion, the undue hardship defense is waived. Whether defendant can successfully at this late, post-discovery stage move to amend its answer remains to be seen. In any event, Lenkiewicz claims that HUD failed to establish undue hardship. *Id.*

## IV. CONCLUSION

For the aforementioned reasons, the plaintiff's Motion for Summary Judgment will be DENIED.

The defendant's Motion for Summary Judgment will be GRANTED in part and DENIED in part. The defendant's motion is granted with respect to the portions of Lenkiewicz's claim involving her 2009 relocation request, her 2009 request to telework, her 2009 request for a printer, her 2009 request for a parking space, and her termination. The defendant's motion is denied with respect to Lenkiewicz's December 22, 2010 request to telework.

A separate order consistent with this opinion shall issue this date.

It is **SO ORDERED** this 31st day of July 2015.

ROYCE C. LAMBERTH
United States District Judge