# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DENISE L. LENKIEWICZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 13-0261** |
| | ) | |
| **JULIAN CASTRO, Secretary,** | ) | |
| **U.S. Department of Housing and** | ) | |
| **Urban Development** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Currently before the Court is the defendant's Motion for Leave to Amend Answer [85]. The plaintiff in this case, Denise L. Lenkiewicz ("Lenkiewicz"), brings a claim against the U.S. Department of Housing and Urban Development ("HUD") for failure to reasonably accommodate her alleged disabilities under § 501 of the Rehabilitation Act of 1973. In July 2015, the Court issued a Memorandum Opinion [79] granting defendant's motion for summary judgment on all portions of Lenkiewicz's claim except for her December 22, 2010 request to telework. In a separate memorandum and order issued on this date, the Court granted plaintiff's September 22, 2015 motion for partial reconsideration of the Court's previous summary judgment order.

Defendant now moves for leave to amend its answer to plead undue hardship as an affirmative defense to plaintiff's 2010 request to telework. Moreover, defendant's motion seeks to amend its answer to include a defense that Lenkiewicz does not qualify for relief under the Rehabilitation Act. Upon consideration of defendant's motion, plaintiff's opposition, defendant's

reply, and the entire record herein, the Court will **GRANT** defendant's motion for leave to amend its answer.

## I. BACKGROUND

This lawsuit is rooted in HUD's alleged failure to affirmatively accommodate what former employee Denise L. Lenkiewicz characterizes as qualifying disabilities under the Rehabilitation Act of 1973. Lenkiewicz alleges that while she was employed by HUD, she suffered from various physical disabilities, including arthritis in her knees and lower back, a fracture in her right foot, and a chronic respiratory ailment. Am. Compl. ¶¶ 11–12, 21–22. In connection with her purported disabilities, Lenkiewicz requested that HUD make certain specific accommodations, including granting her permission to telework three days a week, privileges to park closer to HUD's headquarters, and easier access to a printer. *Id.* at ¶¶ 14–17. After HUD either denied or ignored her requests, Lenkiewicz eventually filed the present lawsuit, putting forth the theory that HUD failed to reasonably accommodate her disabilities in violation of § 501 of the Rehabilitation Act of 1973. *Id.* at ¶ 1.

In analyzing plaintiff's claim under the Rehabilitation Act, the Court recently ruled for defendant on summary judgment on all but one portion of plaintiff's allegations: the denial of her 2010 request to telework. Mem. Op. 15, ECF No. 79. Essentially, the Court found that in nearly all instances, Lenkiewicz did not exhaust her administrative remedies in accordance with the Rehabilitation Act's jurisdictional requirements. *Id.* at 6-8. With one exception, the Court determined it was bound to dismiss each of plaintiff's allegations because she either never contacted an EEO Counselor or failed to do so in a timely manner. *Id.* at 7-8. Although plaintiff's motion for reconsideration of the Court's summary judgment has now been granted, at the time

defendant filed its motion for leave to amend, Lenkiewicz's December 22, 2010 request to telework was the sole issue to be determined at trial. *Id.* at 15.

### A. Plaintiff's 2010 Request to Telework

As explained above, before the Court granted plaintiff's motion for reconsideration, all that remained for trial is HUD's denial of Lenkiewicz's 2010 telework request. On December 22, 2010, Lenkiewicz submitted a Form 1000 requesting accommodations to telework for Chronic Obstructive Pulmonary Disease with chronic bronchitis and arthritis. *See id.* at 11 (citing Accommodation Request for Persons with Disabilities for Denise Lenkiewicz (Dec. 22, 2010)). HUD ultimately rejected this request. *Id.* at 13. The parties' dispute now centers on "who caused the breakdown in the interactive process" that preceded and partially caused HUD to deny Lenkiewicz's request for a telework accommodation. *Id.* at 15.

In order to establish a prima facie case of discrimination under the Rehabilitation Act for an employer's failure to reasonably accommodate a disability, "a plaintiff must show (1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform their essential functions of the position; and (4) that the employer refused to make the accommodation." *Loya v. Sebelius*, 840 F. Supp. 2d 245, 258 (D.D.C. 2012) (citations omitted). Additionally, to be considered disabled, the plaintiff must show that she "(1) has a physical or mental impairment which substantially limits one or more . . . major life activities; (2) has a record of such an impairment, or (3) is regarded as having such an impairment." *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008) (quoting 29 U.S.C. § 705(20)(B)).

To determine the appropriate reasonable accommodation, federal regulations require agencies, such as HUD, to "initiate an informal, interactive process with the qualified individual

with a disability in need of accommodation." 29 C.F.R. § 1630.2(o)(3). This interactive process is designed to ensure that an agency is fully aware of its employees' purported disabilities and desired accommodations and possesses the information it needs to comply with its obligations under the Rehabilitation Act. As such, "[w]hen the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation." *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014).

Although there is no question that HUD eventually rejected Lenkiewciz's 2010 telework request, there is a "genuine dispute of material fact as to who caused the breakdown in the interactive process" that eventually led to the denial. *See* Mem. Op. 15, ECF No. 79. The D.C. Circuit has recently stated that when evaluating failure to accommodate claims under the Rehabilitation Act:

> [c]ourts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs the interactive process is not acting in good faith. A party that fails to communicate by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility."

*Ward*, 762 F.3d at 31.

Following the template set out in *Ward*, both the plaintiff and defendant have submitted evidence showing that the other is responsible for the breakdown in the process. Indeed, as noted in the Court's order, plaintiff alleges among other things that "HUD denied her December 2010 request without telling her; . . .[and] withheld relevant medical evidence from Dr. Allen and improperly followed his recommendation." Mem. Op. 14 (citation omitted). In response, defendant claims that Lenkiewicz was unresponsive to HUD's request for additional medical documentation, *id.*, thus framing the central dispute to be decided at trial.

To supplement these arguments, the defendant now moves for leave to amend its answer to more fully and directly argue the affirmative defense that even if plaintiff's telework request was properly documented and otherwise legitimate, the proposed accommodation presented an undue hardship and was therefore unwarranted. Def.'s Mot. for Leave to Amend 1-2. At the heart of this argument, HUD claims it did not maintain and could not have effectively implemented a secure computer system that would have permitted Lenkiewicz to work remotely while she was employed at the agency.

## II.  LEGAL ANALYSIS

Primarily because Lenkiewicz was on notice of HUD's undue hardship defense, Lenkiewicz fails to successfully show that amendment would produce any one of the unacceptable outcomes outlined in *Foman v. Davis*, 371 U.S. 178, 182 (1962), namely undue delay, undue hardship, futility, or dilatory motive.

### A.  Standard for a Motion to Amend an Answer

Federal Rule of Civil Procedure 15(a) states that if 21 days have passed since the service of an answer, the defendant may amend that answer "only with the opposing party's written consent or the court's leave." This requirement for timeliness generally ties in with some of the broader goals of notice pleading. As the D.C. Circuit has observed, "notice pleading relies on the principle of fair notice 'to secure the just, speedy, and inexpensive determination' of actions." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir 1997) (quoting Fed. R. Civ. P. 1). Indeed, "notice pleading aims to produce a general chart of possible claims and defenses available to the parties before they embark on the voyage of litigation." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To develop the proper litigation strategy, parties must be able to anticipate the issues that will dispose of the case, and as such, "[f]ailure to raise an affirmative

defense in pleadings deprives the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms." *Id.*

This preference for advance notice, however, must be considered against the Federal Rules' rejection of the idea that "pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and [acceptance of] the principle that the purpose of pleading is to facilitate a proper decisions on the merits." *Id.* (citing *Conley*, 335 U.S. at 48). Consistent with this approach, Rule 15(a) states that "leave [to amend] shall be freely given when justice so requires." The rule also gives district courts the "discretion to determine the propriety of amendment on a case-by-case basis," *id.* at 344, by applying what the D.C. Circuit has referred to as a "generous standard." *Id.* Essentially,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be freely given.

*Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).

To this day, the five *Foman* factors continue to guide district courts' discretion in determining whether or not it is proper to grant a party leave to amend its pleading. *Id.* ("The District Court possesses sufficient familiarity with the circumstances of a case to exercise its discretion wisely and determine whether any of the five enumerated *Foman* factors, or others implied by the Court's 'etc.,' apply in a given case.").

### B. Defendant's Motion

In its current motion, defendant seeks leave from the Court to amend its answer to include the affirmative defense of undue hardship in response to plaintiff's allegation that HUD improperly denied her 2010 request to telework. As previously discussed, with respect to HUD's denial of the

telework request, the proceedings have focused primarily on whether or not Lenkiewicz could

establish that she was an individual with a qualifying disability, *see* Def.'s Mem. in Supp. for its

Mot. for Summ J. 28-30, ECF No. 57; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 1-

13, ECF No. 64, and "whether HUD's denial was due to their failure to engage in a good-faith

interactive process with Lenkiewicz, or Lenkiewicz's failure to do the same." Mem. Op. 13 (listing

the facts that underpin this central dispute).

      With this dispute in the backdrop, the parties have also fought over the merits of

defendant's potential undue hardship defense. *See* Def.'s Mem. in Supp. of Its Mot. for Summ. J.

35-40, ECF No. 57; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 31-35, ECF No. 64;

Def.'s Reply in Supp. of Its Mot. for Summ. J. 10-13, ECF No. 72. The claim of undue hardship

is an affirmative defense under the Rehabilitation Act. *See, e.g., Barth v. Gelb*, 2 F.3d 1180, 1182

(D.C. Cir. 1993) ("[A] claim of undue burden is an affirmative defense in actions under the

Rehabilitation Act of 1973."). As such it must be pled in the defendant's answer. *See* Fed. R. Civ.

P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or

affirmative defense.").

      To determine whether or not an accommodation would impose an undue hardship, courts

must consider: (i) the nature and cost of the accommodation needed under this chapter; (ii) the

overall financial resources of the facility or facilities involved in the provision of the reasonable

accommodation, the number of persons employed at such facility, the effect on expenses and

resources, or the impact otherwise of such accommodation upon the operation of the facility; (iii)

the overall financial resources of the covered entity, the overall size of the business of a covered

entity with respect to the number of its employees, the number, type, and location of its facilities;

and (iv) the type of operation or operations of the covered entity, including the composition,

structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity. 42 U.S.C. § 12111(10)(B). Needless to say, this affirmative defense presents a different set of questions from the dispute over whether HUD or Lenkiewicz bears responsibility for the breakdown in the interactive process set out in the pertinent regulations.

Defendant now seeks leave to amend its answer so that it may fully and forcefully argue that permitting Lenkiewicz to telework as she requested would have entailed enormous expense and imposed an undue hardship upon HUD. In making its case, defendant highlights that "the non-movant generally carries the burden in persuading the court to deny leave to amend," *Dove v. Wash. Metro Area Transit Auth.*, 221 F.R.D. 246, 247 (2004) (citing *Gudavich v. District of Columbia*, 22 Fed. App'x. 17, 18 (D.C. Cir. 2001)); *see also Giardino v. District of Columbia*, 252 F.R.D. 18, 23 (D.D.C. 2008) (discussing non-movant's "burden of showing why the amendment should not be allowed"), and argues that none of the five *Foman* factors—factors which make amendment improper, listed above—are present in this case. First, defendant contends that amendment does not unduly prejudice the plaintiff because "plaintiff received notice of defendant's proposed defense that defendant did not have the proper systems in place to support plaintiff's telework request." Def.'s Mot. for Leave to Amend Answer 4. More specifically, defendant points to an August 7, 2014 Interrogatory that states "no one in Plaintiff's former office teleworked until 2012 . . . . In fiscal year 2012, the office upgraded to a new system which is conducive to teleworking." *Id.* at 4. Moreover, in a deposition, Dr. Dolores Cole further reiterated that due to security concerns, teleworking was not an available option when Lenkiewicz made her request. Specifically, Cole alleges that when HUD implemented the proper security systems in

2012, it cost the agency approximately $5 million. *Id.* at 5 (citing Cole Dep. at 69:15-70:21, 82:6-82:13).

With this information, defendant argues plaintiff was "on notice regarding Defendant's position and received interrogatory responses, supporting documentation, and information from essential witnesses regarding the underlying facts supporting defendant's [affirmative undue hardship] defense." *Id.* Further, defendant asserts that amendment is warranted because it is necessary to enable to the Court to make a proper decision on the merits, a concern both the Supreme Court and the D.C. Circuit have articulated and emphasized. *Id.* at 7 (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962); *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997)).

In response, plaintiffs look to four of the five *Foman* factors—undue delay, dilatory motive, undue prejudice, and futility—to argue that granting defendant leave to amend the answer is unwarranted in this case. First, with respect to undue delay, defendant points to several cases where, as here, leave to amend was denied because either the motion was made after the close of discovery or because the movant was aware of the information underlying the proposed amendment long before moving for leave to amend. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to Amend Answer 6. Next, plaintiff claims that HUD's decision to file its motion for leave to amend immediately before the scheduling conference creates the impression that the motion was intended to delay the trial, currently set for December 2015. *Id.* at 7.

After making these two arguments, plaintiff allots the bulk of its briefing to highlight the ways in which she will suffer undue prejudice if defendant's motion is granted. First, because the factual record on undue hardship is "woefully incomplete," Lenkiewicz never "received notice of Defendant's proposed defense." *Id.* at 8. Indeed, plaintiff correctly asserts that telework capability

is mentioned nowhere in the system-related exhibit accompanying HUD's summary judgment motion and that the undue hardship position heavily relies on testimony of Vicky Lewis and Dolores Cole, neither of whom is a computer specialist. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to Amend Answer 8 (citing ECF No. 57-2, Def. Ex. 14). Plaintiff further claims that when discovery had closed without HUD seeking leave to add undue hardship as an affirmative defense, she reasonably concluded that HUD would not pursue it for "want of sufficient evidence." *Id.* at 9. Indeed, the claim is more persuasive in light of defendant's explicit statement in its answer that "it did not identify an undue hardship that would result from accommodating Plaintiff." *Id.* at 9 (citing Answer ¶ 51).

Plaintiff then argues that this failure to raise the defense earlier in the proceedings unduly prejudices her in several ways. First, additional discovery—which plaintiff claims is necessary and would be extensive—would distract from other aspects of Lenkiewicz's trial preparation. Additionally, this added discovery may delay the trial date and/or complicate or lengthen the trial by introducing technical, computer-related facts into a case that otherwise would focus on Lenkiewicz's qualification, disabilities, and efforts to obtain an accommodation.

### C. Legal Conclusions

The Court will grant defendant's motion because defendant had provided plaintiff with notice of its undue hardship argument and because the motion was filed only weeks after the Court noted the defendant's deficient pleading. In combination, these two facts undercut plaintiff's arguments that granting the defendant's motion would cause undue delay or prejudice or advance defendant's supposedly dilatory tactics.

Courts in this jurisdiction have noted that the "purpose of [Rule 8(c)'s pleading] requirement is to give the opposing party notice of the defense and to permit the opposing party to

develop in discovery and present both evidence and argument before the district court responsive to the defense." *Rhodes v. United States*, 967 F. Supp. 2d 246, 252 n.3 (D.D.C. 2013). Because in this case, Lenkiewicz had notice of defendant's undue hardship defense and the opportunity to discover and present evidence to undercut that defense, justice requires that defendant be granted leave to amend its answer. Contrary to plaintiff's assertion that it had absolutely no notice of defendant's affirmative defense, defendant raised or referenced the issue of undue hardship in interrogatories and in three separate depositions during discovery, including plaintiff's own deposition. Def.'s Mot. for Leave to Amend Answer 4 (citing Response to Pl.'s Interrog. No. 10) ("In any event, no one in Plaintiff's former office teleworked until 2012, well after Plaintiff left the Agency. The system in use in the office up to that point was not conducive to telework."); *id.* at 5 (detailing Cole's deposition discussing the difficulties and expenses associated with establishing a secure computer system conducive to telework); *id.* (detailing Lewis's deposition discussing the same); Def.'s Mot. for Summ. J. 50 (citing Lenkiewicz Dep. at 100:2–100:9) (signaling her awareness that providing telework capabilities was expensive). Indeed, the facts in this case parallel those in *Gerlich v. Department of Justice*, 828 F. Supp. 2d 284 (D.D.C. 2009), where the Court credited defendant's argument that "there [was] no prejudice to plaintiffs because plaintiffs appear to have anticipated the mitigation defense and also previously received notice of the defense by means of the Department's related interrogatories." *Id.* at 291.

Reflecting the centrality of its undue hardship defense, in all three of its summary judgement filings, defendant specifically invoked undue hardship as a means to escape liability, arguing that providing Lenkiewicz with the option to telework would have simply been too expensive. Def.'s Mem. in Supp. of Its Mot. for Summ. J. 1, ECF No. 57 ("Plaintiff's request to telework would have caused an undue hardship on Defendant as it cost approximately five (5)

million dollars, in addition to substantial training of several individuals, to put the systems in place to allow Plaintiff to telework."); *id.* at 35-40 (providing five pages of information and argument to support its undue hardship defense); Def.'s Reply in Supp. of Its Mot. for Summ. J. 10-12, ECF No. 72 (detailing its argument that Lenkiewicz's telework request posed an undue hardship); Def.'s Opp'n to Pl.'s Mot. for Summ. J. 23-29, ECF No. 67 (presenting its undue hardship defense and providing ample detail of the Cole and Lewis depositions supporting its position). Although plaintiff focuses on the language in defendant's answer, which states "that it did not identify an undue hardship that would result from accommodating Plaintiff," Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to Amend Answer 9 (citing Answer ¶ 51), defendant's repeated invocation of undue hardship suggests that the affirmative defense has always been a central issue in this litigation.

In light of this notice, plaintiff's argument that she would be unduly prejudiced by defendant's amended answer falls flat. Beginning in April 2015, when she filed summary judgment briefings, plaintiff has fully argued against the merits of HUD's undue hardship defense. Pl.'s Reply in Supp. of Her Mot. for Summ. J. 5-7, ECF No. 68 (discussing the merits of defendant's undue hardship claim); Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 31-35, ECF No. 64 (same). After submitting these detailed briefs seven months ago, Lenkiewicz has now had ample time to prepare her case; if she seeks additional discovery, the defendant has consented and the Court is willing to grant it. Although the undue hardship defense will make the issues at trial more complicated, that alone does not unduly prejudice the plaintiff; rather, it is a necessary and in some ways foreseeable consequence of the Court's adherence to the "principle that the purpose of pleading is to facilitate a proper decisions on the merits." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir 1997) (citing *Conley*, 335 U.S. at 48). Further, addressing

plaintiff's concern over potential postponement of the trial, the trial date remains set for December 14, 2015, subject of course to future motions to vacate the scheduling order.

In coming to this conclusion, the Court notes that "an amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources." *United States* ex rel. *Westrick. V. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013). Listing the ways in which amendment would unduly prejudice her, plaintiff begins by arguing that "taking additional discovery would distract from and otherwise interfere with Lenkiewicz's trial preparation." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to Amend Answer 11. This argument overlooks the principle that, without more, "[i]nconvenience or additional cost to [the non-moving party] is not necessarily undue prejudice." *Id. (*citing *City of Moundridge v. Exxon Mobil Corp.,* 250 F.R.D. 1, 6-7 (D.D.C 2008)); *see also Hisler v. Gallaudet Univ.*, 206 F.R.D. 11, 14 (D.D.C. 2001 (finding that if the court "were to employ a policy of denying plaintiffs leave to amend in every situation where an amended complaint may result in additional discovery or expense, then this court would fail to abide by the legal standard of granting leave freely . . . when justice so requires."). The Court therefore finds that plaintiff has not met her burden of showing she would be unduly prejudiced by defendant's amendment.

As well as posing no undue prejudice, granting defendant's motion does not constitute undue delay, once again, because plaintiff was on notice of defendant's affirmative defense. The cases that plaintiff cites to support its undue delay theory deal with altogether different factual scenarios. For example, plaintiff begins her undue delay argument with *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996), a D.C. Circuit case upholding a trial court's ruling to deny leave to amend a complaint after discovery had closed. Unlike in this case, however, the plaintiff sought to amend his original complaint against the District of Columbia to include a police

officer in his individual capacity as an additional defendant. A defendant's motion to formally

plead an affirmative defense after the underlying facts were presented during discovery, as was the

case here, stands on very different footing than a plaintiff's overdue attempt to transform his

municipal liability lawsuit into one that also seeks to hold a police officer personally accountable.

Although the Court agrees that defendant was "careless[]," Pl.'s Mem. of Law in Opp'n to Def.'s

Mot. for Leave to Amend 7, plaintiff was not without notice of defendant's arguments and has

been submitting substantive briefs on the issue for seven months. This underlying dynamic makes

it very difficult for Lenkiewicz to successfully argue undue delay or undue hardship.

In addition to the notice Lenkiewicz received, plaintiff's argument is further weakened

when considering that defendant submitted its motion only weeks after the Court informed him

that its answer was deficient. In ruling on the parties' cross motions for summary judgement, the

Court stated "plaintiff correctly claims that HUD's undue hardship defense fails since undue

hardship is an affirmative defense and HUD failed to plead it in their Answer to Amended

Complaint. . . . Whether defendant can successfully at this late, post-discovery stage move to

amend its answer remains to be seen." Mem. Op. 15, ECF No. 79. Less than two months later and

fully three months before the trial date (set later that day), defendant submitted the present motion.

Even though submitting the motion "fourteen minutes before the scheduling conference" is

somewhat suspect, Pl.'s Mem. of law in Opp'n to Def.'s Mot. for Leave to Amend Answer 7, the

motion can only be considered unfairly dilatory if it were unexpected, which given the notice that

defendant provided, it was not.

Lastly, the Court agrees with the defendant that the amendment is not futile. The defendant

has provided evidence that allowing Lenkiewicz to telework would have been prohibitively

expensive. For example, as stated, Dolores Cole testified that such a technological upgrade would

have cost the agency approximately five million dollars. *See* Def.'s Mot. for Leave to Amend 5. Not only that, but Lenkiewicz was aware of the potentially huge expenses that teleworking entailed, a fact makes defendant's undue hardship argument more plausible. Def.'s Mot. for Summ. J. 50 (citing Lenkiewicz Dep. at 100:2—100:9 ("Q: Do you—to the best of your knowledge, was there an upgrade of FMS while you were still working? A: It was being talked about. It was—you know, it wasn't in—because my understanding is it was expensive.").

Due largely to the notice plaintiff received and the timing of defendant's filing, the Court will grant defendant's motion for leave to amend its answer. The Court will reopen discovery and permit the plaintiff to gather information relating to defendant's defense of undue hardship. As of now, the Court's Order setting trial for the week of December 14, 2015 remains in effect, though the Court welcomes the plaintiff to submit a motion to vacate. Further, the defendant's separate request to amend its answer to include a defense that Lenkiewicz does not qualify for relief under the Rehabilitation Act is now moot, as plaintiff has acknowledged that "any evidentiary dispute [around the issue of Lenkiewicz's disabilities] can be resolved at trial without any amendment to the pleadings." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Leave to Amend Answer 17.

If the parties' schedules permit, the Court will set a status conference for the week of November 23, 2015.

**III. CONCLUSION**

For the reasons stated herein, the Court will **GRANT** defendant's motion for leave to amend its answer to include the defense of undue hardship.

A separate order consistent with this Opinion shall issue on ~~this day of~~ November 20 2015.

_____
Royce C. Lamberth
United States District Judge