# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DENISE L. LENKIEWICZ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Case No. 13-0261 (RCL)** |
| ) | |
| **JULIAN CASTRO, Secretary,** ) | |
| **U.S. Department of Housing and** ) | |
| **Urban Development** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

Currently before the Court are plaintiff's [56] and defendant's [57] cross-motions for summary judgment, which again became ripe for decision as a result of the Court's order [107] granting plaintiff's motion for reconsideration of the Court's previous order [58] on summary judgment. For the reasons set forth below, the plaintiff's Motion for Summary Judgment will be GRANTED in part and DENIED in part. The defendant's Motion for Summary Judgment will be GRANTED in part and DENIED in part.

### I. Background

The plaintiff in this case, Denise L. Lenkiewicz ("Lenkiewicz"), brings a claim against her former employer, the U.S. Department of Housing and Urban Development ("HUD"), for failure to reasonably accommodate her alleged disabilities under § 501 of the Rehabilitation Act of 1973. Lenkiewicz began working at HUD in October 2008. Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 3, ECF No. 56. During her roughly three years of employment, she claims to have suffered from three separate, though related, disability claims, all of which she requested that HUD

reasonably accommodate. First, Lenkiewicz claimed her "debilitating arthritis" was a "hindering disability." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 15, ECF No. 64 (citing Pl.'s Ex. 22, LENK_0055). Before joining HUD, she was diagnosed with tricompartmental osteoarthritis in both knees and polyarthralgia, a form of arthritis, in her lower back. Am Compl. ¶ 11. Second, and compounding the problems associated with her arthritis, Lenkiewicz fractured her right foot in November 2009, and in April 2010 tore the meniscus in her right knee. *Id.* Third, Lenkiewicz claims to have suffered from Chronic Obstruction Pulmonary Disease ("COPD") with chronic bronchitis, a respiratory illness that causes her "breathing difficulty." *Id.* at 21.

In connection with these alleged disabilities, plaintiff asserts she made five separate requests for reasonable accommodations, all of which HUD denied. Plaintiff claims that over the course of nearly two years, she made the following five requests: "(i) a printer at her workstation, (ii) a parking space, (iii) relocation to the HUD office located in the portals building, (iv and v) and on two separate occasions the ability to work from home (or 'telework')." *See* Mem. Op. 2, ECF No. 109 (citing Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 7). After submitting these various accommodation requests, Lenkiewicz stopped reporting for work in May 2011. Def.'s Statement of Material Facts Not in Dispute ¶ 48.

Although the facts of this case are reasonably straightforward, the procedural posture is complex due in no small part to intervening D.C. Circuit case law that compelled the Court to grant plaintiff's recent motion for partial reconsideration of its original July 2015 summary judgment order [78]. In that original July 2015 order, the Court found it lacked jurisdiction over the case for all but Lenkiewicz's second request to telework because she had failed to exhaust her administrative remedies.

In making this initial finding, the Court determined that because Lenkiewicz had "never contacted an Equal Employment Opportunity ('EEO') Counselor or filed an administrative complaint" for her 2009 requests to telework and relocate, the Court lacked jurisdiction over those aspects of her claim. Mem. Op. 6, ECF No. 79. In looking to her requests for a parking space and printer, the Court ruled Lenkiewicz's failure to initiate contact with an EEO Counselor within 45 days of the alleged discriminatory occurrences also presented a jurisdictional bar and resulted in dismissal. This ruling left plaintiff's 2010 telework request as the only portion of Lenkiewicz's case over which the Court had jurisdiction. In evaluating this 2010 telework request, the Court determined "there is a genuine dispute of material fact as to who caused the breakdown in the interactive process, leading to the denial of Lenkiewicz's request for accommodation." Mem. Op. 15, ECF No. 79. At the time, this factual dispute framed the sole issue to be determined at trial.

One month after this summary judgment order was issued, the D.C. Circuit decided *Doak v. Johnson*, 798 F.3d 1096 (D.C. Cir. Aug. 18, 2015), binding the Court to revisit its jurisdictional rulings and come to the contrary conclusion. *Doak* specifically ruled that a plaintiff's previous failure to comply with the EEOC's 45-day requirement does not strip federal courts of jurisdiction after the conclusion of the administrative proceedings. *Id.* at 1104. The Circuit's opinion went further, however. *Doak* held that "issues concerning how a claimant participates in [the] administrative process, both procedurally and substantively, are not of jurisdictional moment." *Id.* Furthermore, only a plaintiff's "wholesale failure to file an administrative complaint or to obtain any administrative decision at all" would jurisdictionally bar federal courts from hearing the case. *Id.* at 1103.

In light of *Doak*, the Court reconsidered its previous summary judgment order and made two general findings. First, after *Doak*, it is clear the Court does in fact have jurisdiction over every

accommodation request Lenkiewicz made in connection with her present Rehabilitation Act claim. *See* Mem. Op. 2, ECF No. 109. Second, HUD effectively waived its exhaustion argument for four out of five of Lenkiewicz's requests because HUD had received notice of these requests and "never raised [failure to exhaust] during the administrative proceedings," which the D.C. Circuit ruled must be expressly argued as an affirmative defense. Mem. Op. 14, ECF No. 109 (quoting *Doak*, 798 F.3d at 1104). In contrast, Lenkiewicz did not provide notice of her 2009 request to telework in the administrative proceeding, and the defendant therefore did not waive its defense of failure to administratively exhaust. As such, the Court is barred from hearing that aspect of Lenkiewicz's claim. *Id.* at 16–18. The Court now turns to the remaining unresolved aspects of the parties' previous summary judgment motions, i.e., Lenkiewicz's 2009 requests for a printer, to relocate, and for parking, all of which have again become ripe after the Court's order granting plaintiff's motion to partially reconsider its prior jurisdictional determinations. *See* Mem. Op. 20, ECF No. 109

## II. Reconsideration of Summary Judgment Motions for the Remaining Accommodation Requests

Looking to the remaining aspects of Lenkiewicz's claim and re-evaluating the parties' cross-motions for summary judgment, genuine disputes of material fact exist with regard to Lenkiewicz's request for a printer and the reasonability of HUD's ensuing accommodation. Lenkiewicz prevails as a matter of law, however, on her 2009 relocation and parking requests to the degree those requests related to her broken foot, and defendant prevails as a matter of law on the portion of plaintiff's claim that relates to the presence of mold in her office.

### A. Legal Standard for Summary Judgment

As articulated in the Court's previous order, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

In making a summary judgment determination, the court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255. However, "the mere existence of a scintilla of evidence in support of the non-moving party" is insufficient to create a genuine dispute of material fact. *Id.* at 252. Instead, evidence must exist on which the jury could reasonably find for the non-moving party. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### B.  Legal Standard Under the Rehabilitation Act

Section 501 of the Rehabilitation Act mandates federal employers "act affirmatively on behalf of disabled individuals." *Loya v. Sebelius*, 840 F. Supp. 2d 245, 258 (D.D.C. 2012) (citing 29 U.S.C. § 791(b); *Se. Cmty. Coll. v. Davis*, 442 U.S. 397 (1979)). The federal agency must "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless the [agency] can demonstrate that the

accommodation would impose an undue hardship on the operations of its business." *Id.* (quoting 29 C.F.R. § 1630.9(a)).

To establish a prima facie case of discrimination under the Rehabilitation Act for an employer's failure to reasonably accommodate a disability, "a plaintiff must show '(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make the accommodation." *Id.* (citing *Woodruff v. LaHood*, 777 F. Supp. 2d 33, 39 (D.D.C. 2011); *Graffius v. Shinseki*, 672 F. Supp. 2d 119, 125 (D.D.C. 2009)). In order to be considered disabled under the Rehabilitation Act, an individual must show that she "(1) has a physical or mental impairment which substantially limits one or more . . . major life activities; (2) has a record of such an impairment, or (3) is regarded as having such an impairment." *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008) (quoting 29 U.S.C. § 705(20)(B)). Moreover, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i). Basic abilities, including "walking, seeing, and hearing" qualify under the Act, while "activities that lack central importance to most people's daily lives" do not. *Adams*, 531 F.3d at 944 (citations and internal quotation marks omitted).

In determining the appropriate reasonable accommodation, the government has the burden to "initiate an informal, interactive process with the qualified individual with a disability in need of accommodation." *Loya*, 840 F. Supp. 2d at 258 (quoting 29 C.F.R. § 1630.2(o)(3)). Relatedly, "[a]n employer is not required to provide an accommodation prior to receiving medical documentation that substantiates the employee's need for accommodation." *Graffius v. Shinseki*, 672 F. Supp. 2d 119, 130 (D.D.C. 2009) (citing *Flemmings v. Howard Univ.*, 198 F.3d 857, 861

(D.C. Cir. 1999)). Indeed, "when the duty to reasonably accommodate arises, both employee and employer must exchange essential information and neither side can delay or obstruct the process." *Id.* (citations and internal quotation marks omitted). Lastly, "[a]n employer is not required to provide an employee that accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *Loya*, 840 F. Supp. 2d. at 258; *see also Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998).

### C. Lenkiewicz's 2009 Printer Request

There is a genuine dispute of fact as to whether or not HUD provided Lenkiewicz with a reasonable accommodation after she requested a printer in her office. After fracturing her foot, Lenkiewicz spoke to her "first-level supervisor," Vicky Lewis, requesting that a spare printer be moved to her workstation "because she could not comfortably walk back and forth to the printer. Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 8 (quoting Lewis Dep. 58:14–18). At the time, Lenkiewicz's foot injury had severely curtailed her ability to walk, forcing her to use crutches and a scooter to get around the office. Lenkiewicz Dep. 101:3–10; Lewis Dep. 58:19–59:4. Placing an accommodation at Lenkiewicz's workstation "would have allowed her to perform the essential functions of her position by reducing the physical strain and shortness of breath associated with making frequent trips to the printer." Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 8, Ex. 2, Pl.'s Resp. to Def.'s Interrog. No. 3.

After Lenkiewicz requested a printer, Ms. Lewis responded in three ways. First, she investigated the issue and discovered that there were no spare printers available in her department. Def.'s Statement of Material Facts ¶ 7, ECF No. 57 (citing Lewis Dep. at 209:19–210:18). Second, several months later, Ms. Lewis arranged for "support staff to pull documents off the printer and personally deliver them to Plaintiff to avoid Plaintiff walking back and forth to the printer." Def.'s

Opp'n to Pl.'s Mot. for Summ. J. 5, ECF No. 67 (citing Lewis Dep. at 210-:5–210:18). Lastly, Ms. Lewis "informed [Lenkiewicz] that she could go to the Reasonable Accommodation office and file a formal accommodation claim if she did not want to accept the alternative accommodation of having her printed documents hand-delivered." *Id.* at 6 (citing Lenkiewicz Dep. 114:6–115:199). Although Lenkiewicz never filed a formal accommodation request with the Reasonable Accommodation office, she repeatedly emailed the head of HUD's Reasonable Accommodations Branch, Debbie Rizzo, in an attempt to secure a printer at her workstation. *See* Pl.'s Mem. of Law in Supp. of Her Motion for Summ. J. 8. Rizzo ignored all of Lenkiewicz's emails—a fact that defendant does not dispute.

While in this instance Lenkiewicz satisfies three of the four elements of her Rehabilitation Act claim, there is a genuine dispute over whether or not HUD's alternate accommodation of was reasonable. First, Lenkiewicz's broken ankle rendered her disabled. In fact, the relevant regulation highlights "walking" as a basic ability that qualifies under the Act. *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008). Although Lenkiewicz possibly failed to submit sufficient documentation at the time of her accommodation requests, that alleged failure is irrelevant to the proper legal analysis, contrary to defendants' argument. There is simply "no precedent establishing such a restriction on the kind of evidence that can be presented to demonstrate her disability." *See* Mem. Op. 11, ECF No. 79. Second, HUD was on notice of the disability, a point that defendant altogether failed to address in its motions. Pl.'s Reply in Supp. of Her Mot. for Summ. J. 11. Indeed, when Lenkiewicz requested parking privileges in August 2009, she submitted a note to Lewis from one of her treating orthopedists, Dr. Dawson stating she "had a delayed union and healing of a weightbearing fracture to her right 5th metatarsal that incapacitates her from walking or standing for prolonged periods." Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 10 (citing Ex. 23,

LENK_0782). Moreover, Lewis actually saw Lenkiewicz "using a scooter . . . during the time she had a knee injury." *Id.* at 32 (citing Ex. 16, Lewis Dep. 58:19–59:4). Third, and as already noted in the Court's previous memorandum opinion on summary judgment, Lenkiewicz satisfies the law's third element because she "has the skills, experience, and expertise necessary to perform the essential functions of the FOIA Specialist position at HUD and she was and remains capable of performing those essential functions." Mem. Op. 12–13, ECF No. 79 (citing Shroeder Rep. ¶ 27, ECF No. 56-12).

Looking to the fourth element of Lenkiewicz's Rehabilitation Act, genuine disputes exist over whether or not HUD's arrangement for Lenkiewicz's print-outs to be hand-delivered was reasonable. As the Circuit has pointed out, "few disabilities are amenable to one-size-fits-all accommodations." *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014). Importantly, "[a]n employer is not required to provide an employee that accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *Loya v. Sebelius*, 840 F. Supp. 2d 245, 258 (D.D.C. 2012). As such, there must be "a flexible give-and-take between employer and employee so that together they can determine what accommodation would enable the employee to continue working." *Ward*, 762 F.3d at 32 (citations omitted). Whether or not the ultimate accommodation that an employer provides is reasonable is a question of fact.

In this case, when Lenkiewicz requested an accommodation for her broken foot, her supervisor arranged for other employees to pick documents up off the printer and hand-deliver them. Def.'s Statement of Material Facts ¶ 8, ECF No. 57 (citing Lewis Dep. 219:19–210:18). For Lenkiewicz, however, this arrangement was unworkable. She found the arrangement to be "cumbersome" because the contractor tasked with picking up her print-outs already "had a multitude of things to do." Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 9 (citing 113:12–

20, 225:6–25). Moreover, HUD delayed in its provision of this accommodation, setting up this system months after Lenkiewicz made the request. A genuine dispute of material fact therefore exists as to whether HUD's arrangement for a contractor to pick up and hand-deliver Lenkiewicz's print-outs reasonably accommodated her broken foot and subsequent request for a printer to be placed at her workstation. As a consequence, the Court will deny both plaintiff's and defendant's cross-motions for summary judgement on the issue.

### D.  Lenkiewicz's 2009 Parking and Relocation Requests

Although summary judgment is inappropriate for Lenkiewicz's printer request, the Court finds that with respect to her 2009 requests for parking and relocation, plaintiff is entitled to summary judgment insofar as the disability in question concerns her broken foot and mobility impairments, and defendant is entitled to summary judgment for the portion of plaintiff's claim concerning the presence of mold in her office. For plaintiff's requests for parking and relocation, to the extent they relate to Lenkiewicz's mobility issues, there is no genuine dispute of material fact, and as a matter of law Lenkiewicz satisfies the four elements of the Rehabilitation Act. Moreover, the defendant asserts no affirmative defenses and no reasonable jury could find that her employer "participated in good faith" in the regulatory process designed to determine what, if any, accommodations are necessary. *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014).

In 2009, plaintiff requested that she be given a parking space at HUD headquarters and that her workstation be "relocated to the HUD office located in the nearby 'portals' building." Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 12 (quoting Pl.'s Resp. to Def.'s Interrog. No. 3). At the time of these requests, Lenkiewicz "was on crutches" due to her broken ankle and sought to "minimize the distance she needed to walk to her workstation." *Id.* at 10. Relocating Lenkiewicz's workstation away from the tenth floor of HUD headquarters, especially if "coupled

with a parking space, would have allowed Plaintiff to perform the essential functions of her job by . . . reducing the physical strain associated with commuting to work." *Id.* at 12 (citing Pl.'s Resp. to Def.'s Interrogatory No. 3). In addition to her injuries and mobility issues, Lenkiewicz asserts a second basis on which she was entitled to office relocation or a similar accommodation; that is, mold in her office was aggravating her chronic respiratory problems. *See* Pl.'s Statement of Undisputed Material Facts in Supp. of Her Mot. for Summ. J. ¶ 44 (citing Lenkiewicz Dep. 131:11–13) ("Lenkiewicz requested a transfer to the portals building because she was experiencing frequent breathing problems at work and believed that something in HUD headquarters was making her sick.").

In seeking these accommodations, Lenkiewicz first made a direct request to Ms. Lewis for a parking space. *Id.* at ¶ 35 (citing Lenkiewicz Dep. 100:14–104:13, 224:9–19; Pl.'s Resp. to Def.'s Interrog. No. 3). In doing so, she provided Lewis with a note from her physician, Dr. Dawson, specifically emphasizing that "parking privileges" would "place her closer to the workplace and minimize standing or walking so that she may heal her injuries." Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 10 (citing Ex. 23, LENK_0782). In addition to contacting Lewis, Lenkiewicz sent several emails to Debbie Rizzo, the head of HUD's Reasonable Accommodation Branch, requesting a parking space and offering to provide the updated doctor's note to support her request. *See id.* at 10–11. Rizzo never responded, a fact that once again, defendant does not dispute. *Id.*

As Rizzo ignored Lenkiewicz's emails, Lewis directed Lenkiewicz to request a parking space from HUD's Mail and Transportation Branch. *Id.* at 11 (citing Lenkiewicz Dep. 102:3–11). Lenkiewicz did so, informing the department that she required a more convenient parking space because her broken foot was not healing. *Id.* (citing Lenkiewicz Dep. 103:17–104:1). The Mail

and Transportation Branch responded that no parking spaces were currently available, effectively

denying her request. *Id.* (citing Lenkiewicz Dep. 103:6–16)

Importantly, the government does not attempt to rebut these facts. The whole of

defendant's list of undisputed facts relating to plaintiff's request for a parking spot is:

> In 2009 Plaintiff also requested a parking spot. Plaintiff injured herself, and as a
> result, suffered temporary mobility issues. Plaintiff was informed that she could
> contact the parking office and request a space. Plaintiff contacted the parking office
> and was informed that there were no parking spots available at that time. Plaintiff
> waited approximately two (2) years to raise a claim.

Def.'s Statements of Material Fact Not in Dispute ¶¶ 11–14. Indeed, the government's entire

argument for summary judgment with respect to Lenkiewicz's parking request rests on the notion

that the Court does not have jurisdiction to hear this aspect of plaintiff's claim, an argument that

the Court recently rejected. *See* Mem. Op. 10, ECF No. 109. To be clear, defendant does dispute

the merits of Lenkiewicz's request for a printer, her 2010 telework request, and the degree to which

mold agitated her COPD. *See* Def.'s Mem. in Supp. of Its Mot. for Summ. J. 25, 27, 44.

Importantly, however, nowhere in its briefing does HUD dispute that Lenkiewicz provided Lewis

with a doctor's note in connection with her parking request or that the Rizzo, the head of HUD's

Reasonable Accommodation Branch, ignored Lenkiewicz's multiple emails inquiring on the status

of her request.

In light of these facts, Lenkiewicz has satisfied the four requirements of § 501 of the

Rehabilitation Act concerning to her requests for parking and relocation to accommodate her

broken foot and related mobility impairments. Looking to the first three elements and as discussed

in section II.C, Lenkiewicz's broken foot rendered her disabled within the meaning of the

Rehabilitation Act, HUD was on notice of this disability, and Lenkiewicz "has the skills,

experience, and expertise necessary to perform the essential functions of the FOIA Specialist

position." Mem. Op. 12–13, ECF No. 79 (citing Shroeder Rep. ¶ 27, ECF No. 56-12). In terms of the law's fourth element, and unlike Lenkiewicz's printing request, there is no genuine dispute that HUD denied plaintiff's requests for parking and relocation. Her supervisors completely ignored her relocation request, Pl.'s Statement of Undisputed Material Facts in Supp. of Her Mot. for Summ J. ¶ 52, and HUD flatly denied her request for parking after Lenkiewicz followed her supervisor's instructions and contacted the Mail and Transportation Branch. *Id.* at ¶¶ 39–40.

In addition to establishing the elements of her Rehabilitation Act claim, it is clear that for Lenkiewicz's printer and relocation requests, HUD—not Lenkiewicz—failed to engage in good faith in the prescribed interactive process. The D.C. Circuit has stated that "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014). The facts of this case demonstrate Lenkiewicz participated in good faith in the process to accommodate her broken foot. As previously discussed, Lenkiewicz provided a doctor's note to Lewis substantiating her need for a parking space, contacted the head of HUD's Reasonable Accommodation Branch, and specifically reached out to the transportation department for a parking space, as Lewis had instructed her to do.

In contrast to Lenkiewicz, HUD failed to engage in good faith in the informal, interactive process outlined in the EEOC's regulations. *See* 29 C.F.R. § 1630.2(o)(3). Of course, "[w]hen the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation." *Ward*, 762 F.3d at 31–32 (citing *Stewart v. St. Elizabeth's Hosp.*, 589 F.3d 1305, 1309 (D.C. Cir. 2010)). In this instance, however, HUD made no such requests. Indeed, the head of the HUD's Reasonable Accommodations Branch ignored Lenkiewicz's repeated

13

emails completely, and the Mail and Transportation Office flatly denied Lenkiewicz's request without asking for how long she would need the parking space or why she required one. Not only that, but Lenkiewicz actually provided a doctor's note to her immediate supervisor to justify her need for parking space and shorter commute and told the Mail and Transportation Office that she had a broken foot. Under these facts, it is clear that HUD failed to make a good faith effort to engage Lenkiewicz to determine if she needed an accommodation and if so, what measures would reasonably and appropriately meet her needs.

As alluded to, defendant provides no facts or arguments to rebut plaintiff's evidence or the Court's general findings on this specific issue. The entirety of defendant's summary judgment briefing concerning plaintiff's parking request relates to jurisdictional arguments and defendant has submitted no motions to amend its filings. As Lenkiewicz's evidence is unrebutted, the Court finds that with respect to her requests for parking and relocation, plaintiff satisfies all four elements of her Rehabilitation Act claim and HUD failed to engage in the good faith in the interactive process the regulations require. The Court will therefore grant plaintiff's motion for summary judgment as it relates to these aspects of her claim.

Unlike Lenkiewicz's broken foot, to the extent Lenkiewicz's 2009 relocation request relates to mold in her office agitating her COPD, the Court finds that the agency was not on notice of Lenkiewicz's chronic respiratory ailment and will therefore rule for defendant on summary judgment for this portion of plaintiff's claim. As discussed, plaintiff alleges that "[s]ometime in 2009, [she] asked Lewis for [her] workstation to be relocated to the HUD office located in the nearby 'portals' building." Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. 18 (citing Pl.'s Resp. to Def.'s Interrog. No. 3). She requested relocation in part because she was "experiencing over-and-over constant breathing problems" and "was convinced that there [was] something in

14

that office making [her] sick." *Id.* at 12 (citing Lenkiewicz Dep. 131:1–10.). Subsequently, Lenkiewicz more clearly expressed that these breathing problems were exacerbated by "presence to mold" in her office. *Id.* at 7 (quoting Def.'s Resp. to Pl.'s Interrog. No. 8).

Accepting that plaintiff's breathing problems qualify as a disability under the Rehabilitation Act, plaintiff has provided no evidence the defendant was on notice of Lenkiewicz's alleged COPD and related respiratory problems at the time of her 2009 relocation request. Reading the record in the light most favorable to Lenkiewicz, HUD was not put on notice of Lenkiewicz's COPD until 2010 when she provided the agency with a worker's compensation application referencing her "chronic bronchitis, respiratory infections, and the inability to breathe," (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 16 (citing Pl.'s Ex. 22, LENK_0049, LENK_0051), and submitted a Form 1000 listing COPD as one of her two "hindering disabilities." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 15. The closest that Lenkiewicz came to providing HUD with notice of her COPD was informing the agency of her hospitalization for "breathing distress in early 2009." *Id.* at 15. Knowledge that Lenkiewicz was hospitalized for "breathing distress," however, did not put HUD on notice that she may have had a qualifying disability in need of accommodation under the Rehabilitation Act. Indeed, knowledge of Lenkiewicz's single hospital visit alone could not and did not inform HUD that she had a chronic and permanent disease.

Put differently, to the degree that Lenkiewicz's relocation request related to mold, HUD was not on notice that a nexus existed between her request and her alleged disability. Indeed, HUD specifically "disputes that any request to transfer offices was associated with alleged breathing impairments." Def.'s Resp. to Pl.'s Statement of Material Facts Not in Dispute ¶¶ 42–53, ECF No. 67-1. Moreover, as defendant point out, the air quality report plaintiff has submitted to demonstrate

the existence of mold in Lenkiewicz's office was performed more than two years after the relocation request in question—further attenuating any link between Lenkiewicz's request and her COPD. *Id.* Insofar as Lenkiewicz's 2009 request for relocation implicates her COPD and the presence of mold in her office, HUD was not on notice of plaintiff's disability, and she has therefore failed to establish a prima facie case under § 501 of the Rehabilitation Act. For these reasons, the Court will therefore grant defendant's summary judgment motion on the portion of plaintiff's claim that related to the presence of mold in her office.

### III. Conclusion

To conclude, in two separate orders and opinions on summary judgment, the Court has ruled in the following way. First, Lenkiewicz's 2009 request for telework is barred because plaintiff failed to provide defendant with notice of this request during the administrative proceeding. *See* Mem. Op. 14, ECF No. 109. Second, the Court will grant plaintiff's motion for summary judgment on her requests for parking and relocation insofar as these requests concern her broken foot and related mobility issues. Third, the Court will grant defendant's motion for summary judgment on the parts of plaintiff's claim relating to the presence of mold in her office. Fourth, the Court will deny both plaintiff's and defendant's cross-motions for summary judgment with respect to plaintiff's request for a printer, leaving the reasonability of HUD's accommodation as a question of fact to be determined at trial. Lastly, for Lenkiewicz's 2010 request to telework, questions remain as to who caused the breakdown in the interactive process and whether or not teleworking imposed an undue burden on HUD. *See* Mem. Op. 15, ECF No. 79, Mem. Op. 15, ECF No. 108.

For the aforementioned reasons, the defendant's Motion for Summary Judgment will be GRANTED in part and DENIED in part. The defendant's motion is granted for the portion of plaintiff's claim that relates to the presence of mold in her office. The plaintiff's Motion for Summary Judgment will also be GRANTED in part and DENIED in part. The plaintiff's motion is granted with respect to the portions of Lenkiewicz's claim involving her 2009 parking request and her 2009 relocation request insofar as these requests concern to her broken foot and related mobility issues. Both the plaintiff's and defendant's motions are denied with respect to Lenkiewicz's request for a printer.

A separate order consistent with this Opinion shall issue on this day of November 30, 2015.

ROYCE C. LAMBERTH
United States District Judge